J-S26002-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MARQUISE DOGAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ALEXIS BEASLEY | : | No. 358 MDA 2026 |
| | | |
| Appellee | | |

Appeal from the Order Entered February 5, 2026
In the Court of Common Pleas of Berks County
Civil Division at No(s): 21-696

BEFORE:  PANELLA, P.J.E., NICHOLS, J., and NEUMAN, J.

MEMORANDUM BY PANELLA, P.J.E.:          **FILED: AUGUST 4, 2026**

Marquise Dogan ("Father") appeals *pro* se from the final custody order entered on February 5, 2026, which resolved Father's petition to modify custody, and maintained the custody arrangement from the parties' prior custody order, which provided Alexis Beasley ("Mother") with primary physical custody of their minor child, M.L.B.-D., born in September 2020 ("Child") and Father with partial physical custody. Notably, the order also included provisions addressing concerns raised by Father in his petition, related to issues about Mother's driving and Mother's possible relocation. As we find the trial court did not abuse its discretion, we affirm.

Mother and Father were never married, and did not know each other well when Mother became pregnant with Child. They ended their relationship

before Mother gave birth to Child in September 2020. After the birth of Child, Mother and Father lived approximately 50 miles apart, with Child living primarily with Mother and Mother's parents since birth. Father visited Child at Mother's home for the first several months of Child's life.

In January 2021, Father filed a custody complaint seeking shared legal and physical custody of Child. He followed that with an emergency petition for special relief. On March 30, 2021, after a hearing, the court entered a temporary custody order, granting Mother and Father shared legal custody and awarding primary physical custody to Mother. Father was given partial physical custody every Tuesday and Thursday for 24 hours and every Saturday for two hours.

On December 13, 2021, following a custody trial, the court entered a final custody order, giving the parties shared legal custody, and granting primary physical custody of Child to Mother and partial physical custody to Father. Pursuant to the order, Father would have custody of Child every other weekend from Friday at 7:00 p.m. until Monday at 7:00 p.m. and every Wednesday at times agreed to by the parties in accordance with Father's work schedule. We affirmed the December 2021 custody order after Father appealed. **See Dogan v. Beasley**, 113 MDA 2022 (Pa. Super. filed July 6, 2022) (unpublished memorandum).

On November 9, 2023, Father filed a petition for modification of custody, seeking shared legal and primary physical custody of Child. Father averred

that since the entry of the December 2021 custody order, "the circumstances [had] changed in a substantial and continuing way," listing the following alleged changes:

a. []Mother has persistently failed and refused to pick up [C]hild at the designated meeting point in King of Prussia, PA, indicating that she is physically/mentally unable to do so and does not have any familial support to act in her place;

b. As a result of the long list of physical and mental impairments Mother has indicated to []Father, Father is concerned that he needs to be more involved in [C]hild's life to make the transition to when he will need to be her primary parent less traumatic;

c. Mother has been hospitalized as a result of her conditions and Father is concerned that [C]hild will [be] left without appropriate care and comfort due to Mother's unexpected incapacity without Father being made aware of the situation;

d. Father is living in a new residence, is married and has a sibling on the way for [C]hild and Father respectfully believes [C]hild's long and short-term best interests will best be served by allowing [C]hild to live primarily with Father, his wife, and [C]hild's sibling;

e. Mother has acted in contempt of the current Order or is physically and/or mentally unable to meet her responsibilities under the said Order, which potentially sets a bad example for [C]hild;

f. If granted primary custody, Father is willing to provide all transportation to facilitate the schedule so [C]hild is not left waiting and wondering when, where, and whether exchanges are going to occur on a regular, consistent basis, depriving [C]hild of stability and continuity.

Petition for Modification of Custody, 11/9/23, at 1-2. In response, the court directed the parties to appear for a custody conciliation conference before a hearing officer. After a continuance, the custody conference was held on January 22, 2024. The hearing officer subsequently filed a report and

recommendation.[1] Following Father's filing of timely exceptions to the hearing officer's report and recommendation, the court scheduled a custody trial.

Prior to trial, Father filed an emergency petition for interim or special relief, seeking exclusive physical custody of Child based on Father's belief that Child's continued residence at Mother's home posed a legitimate risk of imminent bodily harm. Father asserted that Mother suffers from frequent and significant health issues that regularly prevent her from complying with the current custody order. Father highlighted that Mother had posted several pictures and texts on social media attributing her health problems to the discovery of toxic mold in her residence, but that she had not mentioned how the presence of mold may have contributed to Child's health issues, including asthma. Father also expressed a concern about relocation, stating that Mother had asserted she was moving to a new residence but had not informed him of the county of her new residence, which could affect Child's school enrollment. Following a hearing, the court denied the emergency petition.

The custody trial began on April 9, 2025. During the trial on April 10, 2025, a discrepancy occurred in Father's testimony regarding what school district he lived in, with Father continuously maintaining he lived in the Lower Merion School District until it was confirmed his address is in the Philadelphia

---

[1] While it is clear from the record that the hearing officer filed a report and recommendation, the report and recommendation itself does not appear in the certified record. As the instant appeal concerns the subsequent custody trial, we do not find this absence hampers our disposition.

- 4 -

School District. The court, after thorough questioning on this discrepancy, was clearly perturbed by the seeming attempt to deliberately mislead the court in order to create the impression he lived in a better school district.

Father's counsel then informed the court that an ethical issue had developed leading to counsel concluding he could no longer represent Father based on a conflict under rules of professional conduct. Accordingly, the court allowed counsel to withdraw and continued the trial to allow Father to retain new counsel. In the meantime, the court entered an interim custody order, under which the parties shared legal custody, and maintained that Mother had primary physical custody and Father had partial physical custody every other weekend from 7:00 p.m. on Friday until 7:00 p.m. on Monday, and every Wednesday from 4:00 p.m. until 7:00 p.m.

After numerous additional continuances, the custody trial was completed on January 7, 2026. Following post-trial submissions, the court entered a decision and order on February 5, 2026. This timely appeal followed.

Father raises the following issues on appeal:

I. Whether the trial court abused its discretion and committed an error of law by failing to give appropriate weight to safety and health considerations under 23 Pa.C.S. § 5328(a)(1) and (15), where the record demonstrates Mother's ongoing health concerns and unsafe conduct affecting the Child's safety. []

II. Whether the trial court abused its discretion under 23 Pa.C.S. § 5328(a)(2.3) by attributing parental conflict equally to both parties, where the record demonstrates one-sided hostility, disparagement, and refusal to engage in co-parenting efforts by Mother. []

III. Whether the trial court abused its discretion under 23 Pa.C.S. § 5328(a)(3), (4), and (6) by finding the Child's environment with Mother stable despite instability, including repeated daycare changes and anticipated relocation affecting the Child's education, and by failing to consider the Child's strong sibling bond in Father's home. []

IV. Whether the trial court abused its discretion under 23 Pa.C.S. § 5328(a)(12) by imposing a schedule that conflicts with Father's work schedule and fails to account for Mother's secondary employment. []

Father's Brief, at 12.[2]

"We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad." **S.W.D. v. S.A.R.**, 96 A.3d 396, 400 (Pa. Super. 2014). As with all custody-related matters, the Pennsylvania courts' "paramount concern is the best interest of the child involved." **Rogowski v. Kirven**, 291 A.3d 50, 61 (Pa. Super. 2023) (internal citation and quotation marks omitted).

"It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, [giving] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion[.]" **King v. King**, 889 A.2d 630, 632 (Pa. Super. 2005) (quoting **Hanson v.**

---

[2] Father raised 13 errors in his 1925(b) concise statement. However, he only raised the above 4 issues in his appellate brief. Upon review, it appears many of the 13 errors are included in some way or another within the 4 issues raised in the appellate brief. To the degree that any issue is not raised or developed in the appellate brief, we find it waived. We proceed to address the issues preserved in the appellate brief.

*Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005)). "Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *Rogowski*, 291 A.3d at 60-61 (citation omitted).

The Child Custody Act sets forth sixteen factors at § 5328(a) that a court must consider prior to modifying an existing custody order. *See E.B. v. D.B.*, 209 A.3d 451, 460 (Pa. Super. 2019). These factors provide as follows:

**(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1), and (2.2) which affect the safety of the child, including the following:

(1) Which party is more likely to ensure the safety of the child.

(2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) The level of cooperation and conflict between the parties including:

(i) which party is more likely to encourage and permit frequent and continuing contact between the child and the other party or parties if contact is consistent with the safety needs of the child; and

(ii) the attempts by a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's good faith and reasonable effort to protect the safety of a child or self shall not be considered evidence of unwillingness or inability to cooperate with the other party. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(3) A willingness and ability of a party to prioritize the needs of the child by providing appropriate care, stability and continuity for the child, considering the parental duties performed by the party on behalf of the child in the past and whether the party is willing and able to perform the duties in the future, and attend to the daily physical, emotional, developmental, educational and special needs of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) Deleted by 2025, June 30, P.L. 18, No. 11, § 1[.]

(6) The child's sibling and other familial relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) to (10) Deleted by 2025, June 30, P.L. 18, No. 11, § 1[.]

(11) The proximity of the residences of the parties.

(12) Each party's employment schedule and availability to care for the child or ability to make appropriate child-care arrangements.

(13) Deleted by 2025, June 30, P.L. 18, No. 11, § 1[.]

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In order to evidence its consideration of these required elements, custody courts must set forth a discussion of these best-interest factors "prior to the deadline by which a litigant must file a notice of appeal." ***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014). This Court has emphasized that the trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 339 (Pa. Super. 2013) (citation omitted). In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***Id.*** at 336.

Preliminarily, in its decision entered following the custody trial, the court set forth the following findings of fact:

1. M.L.B.-D. is a minor child who is a subject of this Decision and Order. M.L.B.-D. is a female who was born in September of 2020. She is the natural child of Father and Mother. At the time of the trial, M.L.B.-D. was four (4) years of age.

2. Father currently resides on Diamond Street in the City of Philadelphia, Philadelphia County, Pennsylvania. Father's residence is located in the Philadelphia School District.

3. For a period of time, Father would not disclose his current address to Mother and contended that he lived in the Lower Merion School District located in Montgomery County, Pennsylvania.

- 9 -

4. Mother currently resides on West Main Street in Norristown, Mon[t]gomery County, Pennsylvania. Mother resides in the Norristown Area School District in Montgomery County, Pennsylvania.

5. The distance between Mother's residence and Father's residence is approximately sixteen (16) miles and involves a drive of approximately forty (40) minutes.

6. Mother is currently employed by Global Services Specials from 8:00 a.m. to 4:00 p.m. Monday[] through Friday. Mother works from home and, as a result, has flexibility.

7. Mother and Father have engaged in ongoing litigation relating to [] Child that began in January of 2021. At the time the custody litigation began, [] Child was four (4) months old.

8. On December 13, 2021 following a custody trial, the Honorable Judge Eleni Dimitriou Geishauser issued a final custody order that provided: (i) the parties shall have shared legal custody, (ii) Mother shall have primary physical custody, (iii) Father shall have partial physical custody every other weekend from Friday at 7:00 p.m. until Monday at 7:00 p.m. and every Wednesday at times agreed upon by the parties in light of Father's work[] schedule, (iv) holidays, (v) vacation, and (vi) other miscellaneous provisions. It is this order that Father seeks to amend.

9. Mother contends that the current custody schedule is working and does not want any changes.

10. Mother admits that Father is generally a good Father.

11. Father and Mother did not know each other well before Mother got pregnant and their relationship ended in or about January or February of 2020, many months before [] Child was born.

12. [] Child[] was born out of wedlock, and is the only child that Mother and Father share together.

13. On at least one occasion while Mother had custody of [] Child, she made a video of herself and [] Child while driving.

14. Mother's decision to make a video of herself and [] Child while Mother is driving poses a risk of harm to both Mother and [] Child.

15. Father contends that there is an unnecessarily high level of conflict between Mother and Father and he contends that it is all Mother's fault.

16. Mother contends that the relationship with Father is not good and they barely speak. She contends that she wants to have a good relationship with Father, but he does not try.

17. The parties attempted co-parenting counseling without success.

18. Father married in April of 2023, and he and his wife have a child that was born in January of 2024. The child shared by Father and his wife is [] Child's half-sister.

19. The relationship between Mother and Father's new wife is virtually nonexistent. Mother contends that they spoke at length when Father first married and the conversation went so poorly, they have not had any substantive conversations since.

20. Mother believes that she suffers from Post Traumatic Stress Disorder that results from the pending custody proceedings. She complains that everything th[at] she says to Father will be ultimately used by him against her and this traumatizes her.

21. Mother has a history of medical issues.

22. Father claims that he and his wife are religiously very devout.

23. Father's religious beliefs create tension between himself and Mother because he views himself as a better person than Mother.

Decision and Order, 2/4/26, at 1-4 (footnotes omitted).

The trial court then provided its analysis of the Section 5328(a) custody factors. The court weighed factors (2), (2.1), (2.2), (3), (12), and (14) equally in favor of both parties. **See** Decision and Order, 2/4/26, at 7-12. The court attributed no weight to factors (7), (11), and (15) as it determined them to be not applicable or not weighing against either party. **See id.** On the other

- 11 -

hand, the court found factor (2.3) weighed heavily against each party equally. While the court did not weigh factor (6) against or in favor of either party, the court noted that both parties should ensure Child is able to develop a relationship with her half-sister.

The court found factor (1) weighs "ever so slightly" in favor of Father, due to Mother's driving decisions involving Child. Conversely, the court found factor (4) weighs against Father's request for modification, due to the need for stability and continuity, and factor (16) weighs "heavily" against Father, due to his deception to the court regarding his home address.

Finally, the court did not address factors (5), (8), (9), (10), or (13), noting they have been deleted by amendment.

Ultimately, the court summarized its conclusions as follows:

In reconciling the weight of the evidence in this case with the statutory custody factors, the [c]ourt finds that both parties genuinely love and care for [] Child. The [c]ourt also finds that [] Child is generally safe in the custody of either party and is properly nourished and lives in a safe environment. The [c]ourt also finds that [] Child's life is very stable.

The problem presented in this case is the interpersonal relationship between Mother and Father. They barely communicate and avoid each other. They need to recognize that their inability to get along serves only to hurt [] Child in the long term.

Thus, the decision in this case is not going to significantly modify the physical custody arrangement between the parties. It will, however, address measures that can hopefully improve the parties' relationship.

*Id.* at 14.

Father contends the court improperly weighed its findings with respect to the custody factors at Section 5328(a)(1), (2.3), (3), (4), (6), (12), and (15). Accordingly, Father argues the court should have granted him either primary physical custody or alternatively a shared physical custody schedule that is consistent with the parties' work obligations and Child's best interests.

Father first argues the court failed to give appropriate weight to the safety and health considerations under factors 1 and 15. Specifically, Father highlights Mother's ongoing health concerns, including her mental health, and unsafe driving conduct while Child is in the car.

During trial, Father testified about one occasion where Mother sent Father a video she had recorded while she was driving, with Child in the back seat, in which Mother and Child are seemingly in a "screaming match," and Child was not properly restrained in her seat. **See** N.T., Custody Trial, April 9-10, 2025, at 33. Father testified that Mother has recorded herself while driving Child on other occasions as well, which makes Father concerned for Child's physical safety. **See id.** at 37.

Importantly, however, Father conceded that if the safety concerns he indicated, *i.e.*, not using the phone while driving Child, and proper use of Child's seatbelt, were addressed, he would not prevent Mother from spending time with Child. **See id.** at 51.

In its decision entered following the custody trial, the court noted that factor 1 "ever so slightly weighs against Mother as a result of her driving

decisions including making a video while driving and operating a motor vehicle while being ill." Decision and Order, 2/4/26, at 7. However, as the court found that Mother otherwise ensures Child's safety, the court concluded that the concerns regarding driving could be remedied by compliance with certain restrictions on driving. *See id.* Nevertheless, the court indicated that this factor weighed in Father's favor due to the driving concerns. *See id.* at 8.

As the court weighed this factor in Father's favor, it appears Father wanted the court to weigh this factor *more* in his favor. As we give deference to the court's weight determinations, we cannot find any errors that occurred here. The court considered all of the testimony given, and did not abuse its discretion by weighing factor 1 in favor of Father, while considering this factor among the remainder of the factors.

There is no indication in the record that Mother would continue to exhibit unsafe driving decisions with respect to Child, if directed appropriately by the court. We find no abuse of discretion in the trial court's conclusion that Mother's driving decisions, while certainly a topic of concern for purposes of Section 5328(a)(1), were not a definitive factor based on the ability to correct the behavior. As such, we find no merit in Father's arguments related to Section 5328(a)(1). *See Rogowski*, 291 A.3d at 60-61.

Regarding Section 5328(a)(15), which pertains to the mental and physical condition of a party, the court did not explicitly weigh this factor in either party's favor. Pertinently, the court acknowledged that "[t]he evidence

established that Mother has a number of health issues that create a general concern for her well-being." Decision and Order, 2/4/26, at 12. However, when considering Mother's health disorders in the specific context of a custody dispute, the court did not find they had a significant adverse impact on Child's well-being, finding Mother "is effectively managing them." *Id.* at 12-13.

We discern no abuse of discretion regarding the trial court's finding that Mother's health disorders are not significantly adversely impacting Child. While Father takes issue with the court's decision not to give more weight to Mother's health disorders, the court properly detailed its consideration of the information it had received from the parties on this issue. As noted above, "with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand." *Rogowski*, 291 A.3d at 61 (cleaned up). Since the record supports the court's findings, we find no merit in Father's arguments under Section 5328(a)(15).

Next, Father argues the court improperly weighed Section 5328(a)(2.3) by attributing parental conflict equally to both parties. Specifically, Father argues the record demonstrates one-sided hostility, disparagement, and refusal to engage in co-parenting efforts by Mother. *See* Appellant's Brief, at 24.

At trial, as to factor 2.3, Father asserted he had concerns about Mother encouraging frequent and continuing contact with Father, because during the one week before his wedding, Mother ignored and did not return his facetime

calls when he attempted to speak with Child. **See** N.T., Custody Trial, April 9-10, 2025, at 48-49, 51. Father admitted that other than that one week, Mother had not previously or since ignored his facetime calls. **See id.** at 52.

However, Father indicated he was still concerned about Mother encouraging contact with Father because of one discussion that occurred in 2023 or 2024, when Mother was going on a "rant", and told Father that if he thought she was a threat he should get a PFA against her, and that if Father did not feel safe around Mother that maybe they should not exchange Child at that time, meaning Child would stay with Mother, until Father figured out if he felt safe. **See id.** at 52-54. Father ended up getting his custodial time on that occasion. **See id.** at 54. Upon questioning by the court, Father admitted that other than those two incidents, there was no other time that Mother failed to encourage or permit frequent and continuing contact between Father and Child. **See id.**

We reiterate that the court is the finder of fact here, and is responsible for making credibility and weight determinations. While Father clearly views the record in a self-serving manner, the court was able to view both Father and Mother's testimony, and see how both sides have contributed, albeit in different manners, to the conflict at hand. In finding this factor weighed heavily against both parties, the court reasoned as follows:

> The level of cooperation between the parties is virtually nonexistent and the level of conflict is high. Both parties profess their innocence and yet each is responsible. They do not communicate and they generally do not show each other even a

modicum of respect. Therefore, this factor weighs heavily against both parties. In the absence of the parties developing a more mature relationship, they will place the Minor Child's emotional well-being at a great risk of harm

Decision and Order, 2/4/26, at 9.

We discern no abuse of discretion. Contrary to Father's arguments, the court aptly summarized the parties' mutual lack of respect for each other. Father essentially is requesting that we re-weigh the evidence to re-cast Mother's hostile communications as the sole issue in the parties' relationship. We are not, however, empowered to overturn the well-supported factual findings of the trial court. *See Rogowski*, 291 A.3d at 60-61. This claim does not merit relief.

Next, Father argues the court improperly weighed factors 3, 4, and 6, regarding the stability of Child's environment. Father argues there is instability with Mother, including repeated daycare changes and anticipated relocation affecting Child's education. *See* Appellant's Brief, at 26. Further, Father argues the court failed to consider Child's strong sibling bond in Father's home. *See id.*

At trial, Father affirmed that he believed he offers a more stable and more consistent environment than Mother, due to how he and his wife structure their house with routines and encourage family and connection. *See* N.T., Custody Trial, April 9-10, 2025, at 66. Father took issue with Mother moving Child to a new school 4 times, without discussing any of those changes with Father. Conversely, Father stated he is stable in his current residence

and plans to remain in the same school district. Father also discussed the "loving bond" between Child and his younger daughter with his wife, and how they all interact as a family. *See id.* at 73-74.

The court found that both parties are willing and able to prioritize Child's needs and perform their parental duties and that the need for stability in Child's life weighs in favor of not making a significant change to the current custody arrangement. *See* Decision and Order, 2/4/26, at 10-11. While the court did not explicitly weigh factor 6, related to siblings, in either party's favor, the court clearly considered this factor and directed both parties to ensure Child is able to develop a relationship with her half-sister.

Under the applicable standard of review, we observe no abuse of discretion in the trial court's reasoning, and we conclude its findings pursuant to Sections 5328(a)(3), (4), and (6) are supported the record. As such, we will not disturb them.

Finally, Father argues the court abused its discretion under Section 5328(a)(12) by imposing a schedule that conflicts with Father's work schedule. *See* Appellant's Brief, at 29. Specifically, Father asserts the court gave him custody on Wednesdays from 4:00 p.m. until 7:00 p.m., despite uncontradicted testimony that Father works until 7:30 p.m. on Wednesdays.

Father stated on the record that he works Tuesday through Thursday, and on Saturdays from 8:30 a.m. to 7:30 p.m., and he is off on Mondays and Fridays. *See* N.T., Custody Trial, April 9-10, 2025, at 67. Father testified that

his schedule is fixed and he does not work any rotating shifts or overtime. *See id.* Father testified that his wife works on Monday, Tuesday, Friday, and Saturday from 9:00 a.m. until 8 p.m. *See id.* When both Father and his wife are working, Father's mom helps with backup care, as she works from home and gets off at 5 p.m. *See id.* Father also testified he receives a backup care benefit from his employer, so he is able to find adequate and immediate care for Child in an emergency event. *See id.* at 67-68.

When Father was questioned about the current custody schedule providing him with Wednesday custody, Father testified that he is not often able to take advantage of the Wednesday custody because of his work schedule. *See id.* at 148. However, while Father has asked Mother for more custody time in general, he could not remember ever asking to change his custody time from Wednesday to an alternate day, like Mondays. *See id.* at 149. Similarly, on appeal, Father does not provide any alternative to the Wednesday custody that would work better with his schedule.[3]

Factor 12 not only calls for consideration of each party's availability to care for the child, but also for consideration of each party's ability to make

_____

[3] Despite offering the above testimony regarding having more reliable backup and alternative care for Child, Father does not explain why he does not utilize those resources on Wednesdays. As one of Father's concerns is Child spending more time with her half-sister, it would appear that Wednesdays could be an opportunity for the siblings to spend time together, whether or not Father is available the whole time.

appropriate child-care arrangements. As Father made clear, he has substantial alternative child-care arrangements that he is able to utilize. Upon review, we conclude the trial court did not abuse its discretion or commit an error of law when it concluded that both parties are employed and have availability for childcare and an ability to make appropriate child-care arrangements.

Father additionally argues that the court failed to account for Mother's secondary employment. Specifically, Father contends the court failed to evaluate Mother's testimony on cross-examination that she performs makeup services on weekends. Upon review of the record, it appears that Mother did not testify until after the continuance of the custody trial, on the final day of trial. The transcript from that date does not appear in the certified record.[4]

Even if we were to accept the small pertinent portion of the transcript from that date that Father includes in the reproduced record as accurate and undisputed, we do not find Father is due any relief. In her testimony, Mother stated that she just started occasionally doing makeup on the weekends. **See** Reproduced Record, at 133a. Mother testified that she had no clients the previous month, as she is not promoting her services and only takes a client if someone inquires. **See id.** at 134a. Her last client was her sister months

_____

[4] As the appellant, "the ultimate responsibility of ensuring that the transmitted record is complete" rested squarely with Father. **See Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*). However, due to the uncontradicted nature of the excerpt from the reproduced record, we do not find the deficiency in the record hinders our ability to review this issue.

earlier, when she needed makeup for an event. *See id.* at 133a. If she had a client when Child is with her, the salon owner would let her bring Child to the salon, where she can play with the other employee's kids. *See id.* at 134a.

As Mother's makeup services remains a minor side job at this point in time, we cannot say the court abused its discretion in not giving it more weight pursuant to factor 12. The record shows that Mother is either available for Child on the weekends, or has made appropriate child-care arrangements if necessary.

Our independent review of the record confirms the court's consideration of the pertinent custody factors, and, while Father clearly disagrees with the court's conclusions, we discern no manifest abuse of discretion in the court's weighing of the evidence or in its credibility findings. The record is replete with credible testimony of conflict between the parties. While we commend Father for wanting to play an increased role in Child's life, there are substantial findings which support the trial court's decision.

Based on the foregoing, we discern no manifest abuse of discretion by the trial court in denying Father's request to modify custody. Therefore, Father is due no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/04/2026